**G. HEILEMAN BREWING COMPANY, INC., Plaintiff–Appellant,**

v.

**The STROH BREWERY COMPANY, Defendant–Appellee.**

No. 85–2230.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 5, 1988.
Decided April 5, 1988.

Jay N. Varon (Jane Golden Belford, Sheila McDonald Gill, Washington, D.C., David E. Beckwith, Foley & Lardner, Milwaukee, Wis., William A. Snyder, Jr., Ober, Kaler, Grimes & Shriver, Baltimore, Md., on brief), for plaintiff-appellant.

Thomas Matthew Wilson, III (J. Hardin Marion, Rebecca A. Laws, Tydings & Rosenberg, Baltimore, Md., on brief), for defendant-appellee.

Before WIDENER, ERVIN and WILKINSON, Circuit Judges.

ERVIN, Circuit Judge:

G. Heileman Brewing Company, Inc. (Heileman), initially filed this action in August 1985, against the Stroh Brewery Company (Stroh), alleging violations of Maryland's Beer Franchise Fair Dealing Act, Art. 2B, §§ 203A–203G ("Beer Franchise Act" or "Act"), breach of contract, and interference with contractual relations. In response to this court's certification of several questions of state law, the Court of Appeals of Maryland has resolved several pertinent issues. Based on the state court ruling, we reverse and remand to the federal district court for further consideration.

## I.

Heileman and Stroh are both in the business of brewing beer and selling their beer nationwide. Under a wholesale agreement (Agreement) between Heileman and Stroh, Heileman's Carling National Breweries Division was the exclusive distributor of certain brands of Stroh beer in Baltimore City and part of Baltimore County. The Agreement provided that Heileman could transfer its distribution rights subject to Stroh's approval. Also, Stroh had the right to terminate the Agreement if Heileman ceased doing business with respect to any one or more Stroh brands without Stroh's consent.

In the spring of 1985, Heileman commenced negotiations with several potential purchasers for the sale of its distribution rights. These included H & S Distributing Company (H & S), a distributor for Stroh in counties adjacent to Baltimore County; Winner Distributing Company (Winner), a distributor for Stroh in the Baltimore area of Stroh brands not distributed by Heileman; and Best Way Distributing Company (Best Way), a distributor previously unassociated with Stroh.

On July 3, 1985, Heileman stopped distributing Stroh brands due to a strike at Heileman's Baltimore location. That same day, Heileman informed Stroh that Heileman wished to sell its distribution rights to H & S and Best Way. Heileman also informed Stroh that, pending Stroh's approval of the sale, Heileman would distribute Stroh brands through H & S and Best Way on a temporary basis. It is disputed whether Heileman distributed Stroh brands after July 3.

Stroh refused to consent to the temporary distribution plan, but Heileman contin-

ued to negotiate a sale with H & S and Best Way. Stroh notified Heileman orally on July 25, and in writing on July 29, that Stroh would not approve the sale to H & S and Best Way. On July 30, Stroh terminated the Agreement with Heileman on the grounds that Heileman had ceased distributing Stroh brands. Subsequently, Stroh appointed Winner as the distributor of Stroh brands in Heileman's former territory.

Heileman brought suit against Stroh in federal district court, alleging violations of the Beer Franchise Act, and breach of contract and interference with contractual relations in violation of Maryland's common law. The district court held that the Beer Franchise Act was not applicable to this case. The lower court also concluded as a matter of law that Stroh terminated Heileman's distribution contract with "good cause," pursuant to the Act.[1] Accordingly, the lower court dismissed Heileman's claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted.

## II.

On appeal in 1986, this court certified the following questions to the Maryland Court of Appeals:

1) Whether the Beer Franchise Act applies to an agreement between a franchisor and a franchisee, when the franchisee is also a manufacturer of beer in competition with the franchisor.

2) Whether the language "unless good cause exists," provided in § 203C, raises a question of fact or law.

3) Whether the 180 day notice, required before franchise termination, applies to an agreement between a franchisor and a franchisee, where the franchisee is also a beer manufacturer in competition with the franchisor.

In its certified opinion, filed April 20, 1987, the Maryland court answered as follows.

First, the state court agreed with Heileman that "there is simply nothing in the Act's language to indicate that the General Assembly meant to exclude from the definition of 'beer distributor' and 'franchisee' a beer distributor that also operates as a beer manufacturer." Certified Opinion at 10. Furthermore, the state court concluded that the purposes of the Act are best served by including the brewer-distributor within its purview. The Act seeks to foster temperance by deterring beer manufacturers from coercing beer distributors into stimulating sales of beer. The Maryland court found "[a] beer manufacturer can exert improper pressure over a beer distributor [regardless of the distributor's size and manufacturing capabilities] because the latter has invested both time and money into promoting and selling the brewer's products." Id. at 11. Based on the Act's unambiguous language and its policy, the Maryland court concluded that the Act applies to an agreement between a franchisor and a franchisee, even where the franchisee is also a competitive manufacturer.

Second, the Maryland court found that a good cause inquiry will "necessarily involve a judgmental process, requiring the application on a case by case basis of established factual findings, which are often subject to varying interpretations or conflicting inferences, to the statutory standard." Id. at 19. Thus, the existence of good cause is not solely a question of law.

Third, in keeping with its determination that the Act is applicable, the Maryland court concluded that the 180 day notice provision is applicable as well. "Assuming good cause exists, section 203D requires Stroh, a beer manufacturer, to provide Heileman, a franchisee, at least 180 days prior written notice of any intent to terminate, cancel, or nonrenew the Wholesaler Agreement." Id. at 21.

## III.

In light of the certified opinion from the Maryland court, this court must address five issues.

---

1. Md.Code Art. 2B, § 203F (1957, 1981 Repl. Vol.), provides that once a franchise is in place, a franchisor cannot "cancel, terminate or refuse to continue or renew any beer franchise, or cause a franchisee to resign from a franchise, unless good cause exists" for such action.

■ First, the lower court held that the Beer Franchise Act does not apply to this case. We disagree. The Maryland court found it would apply the Act in such situations, based on the unambiguous language and the policy of the Act. Heileman's claims are before this court under diversity jurisdiction; we look to the law of Maryland, and its highest court indicates the Act applies. For the reasons expressed by the certified opinion as discussed above, we agree with the Maryland Court of Appeals that the Act applies.

■ Second, the district court found that if the Act were applicable, Stroh's defense that they acted with good cause was a question of law and the court found legal good cause. Once again, the Maryland court differed. The state court found that good cause is a question of fact and law. Stroh argues in the alternative that no dispute of fact exists. However, the record indicates some dispute over the reasons for and length of Heileman's inability to deliver Stroh beer. Now that the Maryland court has interpreted the good cause standard to include a factual determination, this issue must be reconsidered by the lower court.

■ Third, the district court made no direct findings in regard to the 180 day notice requirement because the court found the Beer Franchise Act inapplicable. We remand this issue to the lower court for proper consideration on a more developed record.[2]

■ Fourth, the lower court must reconsider the remaining contract claims. Both common law claims, breach of contract and tortious interference with contract, were dismissed by the lower court based on its finding good cause as a matter of law. As to the breach of contract claim, the lower court found that since Stroh acted with good cause in terminating the distributorship, Heileman had no basis on which to claim unreasonable withholding of approval for sale of the distributorship. In essence,

Heileman had no distributorship on which to base its claim since the franchise was terminated with good cause. Similarly, the lower court found no malice to support the tortious interference claim. The judge ruled there was no legal malice because good cause existed as a matter of law to terminate the distributorship. Now that good cause is again a matter of dispute, these two claims must be reconsidered. We remand both claims for further determination consistent with the new finding regarding good cause.

■ Finally, Stroh raises the new defense on appeal that Heileman repudiated the franchise agreement and thus waived its statutory protections. Because this defense was first raised on appeal, we do not address it. *U.S. v. One 1971 Mercedes Benz, etc.*, 542 F.2d 912, 915 (4th Cir.1976).

In light of the certified opinion from the Court of Appeals of Maryland, we reverse the district court decision and remand the case for further consideration consistent with this opinion.

REVERSED AND REMANDED.

---

2. We reserve judgment at this time on the antitrust implications of the notice requirement. However, based on the Maryland court's emphasis on the manufacturer-distributor relationship of Stroh and Heileman, our initial impression is that the notice provision is not a Sherman Act violation on its face.